IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

<pre>
                                 *
WESTERN WORLD
INSURANCE COMPANY, INC.,         *
     Plaintiff,
                                 *
         v.                           CIVIL NO.: WDQ-14-3967
                                 *
SUR DEVELOPERS & BUILDERS,
INC., et al.,                    *
     Defendants.
                                 *
</pre>

*   *   *   *   *   *   *   *   *   *   *   *   *

MEMORANDUM OPINION

Western World Insurance Company, Inc., ("Western World")

filed this declaratory action[1] against Sur Developers & Builders,

Inc. ("Sur") and others.  ECF No. 1.[2]  Pending are Castaneda-

Escobar's motion to dismiss for improper venue, or to transfer,

ECF No. 17, and Sur's motion to dismiss, or to stay, ECF No. 18.

No hearing is necessary. Local Rule 105.6 (D. Md. 2014).  For

the following reasons, Castaneda-Escobar's motion will be

denied; Sur's motion will be granted in part and denied in part.

---

[1] See 28 U.S.C. § 2201(a); Md. Code Ann., Cts. & Jud. Proc. §§ 3-
401, et seq. (West 2010).

[2] Western World also sued Miguel Castaneda-Escobar and Milton
Home Systems, Inc. ("Milton").  ECF No. 1.  Mr. Castaneda-
Escobar and Milton jointly filed the motion to dismiss for lack
of venue, or to transfer.  See ECF No. 17.  As discussed infra,
Section I.B.2, Milton assigned Mr. Castaneda-Escobar its rights
in a suit against Sur, which suit gave rise to this declaratory
action.  Thus, together, Mr. Castaneda-Escobar and Milton will
be referred to as "Castaneda-Escobar".

I.   Background

    A.   Facts[3]

        1.   The Policy

Western World issued a commercial insurance policy (the

"Policy") to Sur as the "named insured" for the policy period

November 15, 2009 to November 15, 2010.  ECF No. 1 ¶ 9.[4]  The

Policy excluded claims for injuries to Sur's contractors or

subcontractors, and their employees.  *Id*.  The Policy included

the following exclusion (the "Policy Exclusion"):

> EXCLUSION-INJURY TO CONTRACTORS OR SUBCONTRACTORS AND
> THEIR WORKERS
>
> This endorsement modifies insurance provided under the
> following: COMMERCIAL GENERAL LIABILITY
>
> This insurance does not apply to any claim arising
> from injury to any contractor or subcontractor hired
> by or through any insured or to any claim arising from
> injury to any 'employee' or 'temporary worker' of any

---

[3] The facts are from the complaint, ECF No. 1, Castaneda-
Escobar's memorandum in support of his motion, ECF No. 17-1, and
attached exhibits.  For the motion to dismiss for lack of venue,
"the pleadings need not be accepted as true . . . and the court
'may consider facts outside of the pleadings.'"  *Essex Ins. Co.
v. MDRB Corp.*, No. CIVA DKC 2006-0326, 2006 WL 1892411, at *1-2
(D. Md. June 7, 2006).  In reviewing motions to dismiss under
Fed. R. Civ. P. 12(b)(6), the Court may consider allegations in
the complaint, matters of public record, and documents attached
to the complaint that are integral to the complaint and
authentic.  *Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180
(4th Cir. 2009).

[4] Freedom Insurance Agency ("Freedom"), which is located in
Eldersburg, Maryland, was Sur's broker when it obtained the
Policy.  ECF No. 17-1 at 3.

contractor or subcontractor who was hired by or
through any insured.

A contractor or subcontractor will be considered to be
hired by or through any insured if the contractor or
subcontractor was hired directly by any insured or was
hired by another contractor or subcontractor who was
hired by any insured.

*Id.; see also* ECF No. 1-1 at 3.[5]

### 2. The Accident and Underlying Pennsylvania Litigation

Mr. Castaneda-Escobar worked for Ralph M. Construction, Inc. ("RMC"). *Id.* ¶ 17. RMC provided the "set crew" for the installation of a three-story modular home in Bethesda, Maryland. ECF No. 17-1 at 2. Sur owned the construction site and had bought the home from Integrity Building Systems, Inc. ("IBS"), which changed its name to Milton in November 2011. *Id.* at 2-3. On May 12, 2010, Mr. Castaneda-Escobar fell 25 feet from the roof onto the ground and was rendered a quadriplegic. *Id.* at 3.

On September 14, 2012, Mr. Castaneda-Escobar sued Milton and IBS in the Philadelphia County Court of Common Pleas (hereinafter, the "personal injury suit"). ECF Nos. 1 ¶ 11; 1-2 (complaint). According to the personal injury complaint, IBS selected and contracted with RMC to provide the set crew; Sur

---

[5] Sur's insurance application stated that it was a general contractor that "sub[bed] out 100% of [its] work." ECF No. 17-2 at 2.

was identified at IBS's customer.   ECF No. 1 ¶ 13; 1-2 ¶¶ 11, 41, 44, 45.

On November 12, 2013, Milton sued Sur for indemnification and contribution in the Philadelphia County Court of Common Pleas in the event Mr. Castaneda-Escobar prevailed in the personal injury suit (hereinafter, the "indemnification suit"). ECF Nos. 1 ¶ 15; 1-3 (complaint).[6]  The indemnification complaint alleged that Sur was the general contractor responsible for supervising its subcontractors, including RMC, and protecting against hazards.   ECF Nos. 1 ¶ 17; 1-3 ¶¶ 13-18.[7]  Western World undertook the defense of Sur in the indemnification suit pending the earlier resolution of that suit or this declaratory action. ECF Nos. 1 ¶ 19; 17-1 at 6; 17-9 at 3.[8]

In the spring of 2014, Milton and Mr. Castaneda-Escobar began settlement discussions.   ECF No. 17-1 at 7.   "Relying upon the representations of [Sur's] counsel that [Sur] had a one million dollar primary policy, with a possible excess policy, Mr. Castaneda[-Escobar] and Milton [] agreed to settle [the personal injury suit]."   Id.   In the settlement, Milton assigned

---

[6] Milton also asserted a negligence claim.   ECF No. 1-3 ¶¶ 30-38.

[7] Milton's motion to consolidate the personal injury suit and indemnification suit was denied.   ECF No. 17-1 at 7.

[8] Trial of the indemnification suit has not been scheduled.   See Milton Home Systems, Inc., v. Sur Developers/Builders, Civil Case No. 130500683 (PCCP Sept. 11, 2015) (noting that a pretrial conference is pending).

Mr. Castaneda-Escobar its rights in the indemnification suit.
*Id.*

In August 2014, Western World informed Sur that it was
denying coverage and withdrawing its defense of Sur in the
indemnification suit. ECF No. 1-4. Western World explained
that it had not reviewed coverage before assigning defense
counsel. *Id.* at 2. However, because Mr. Castaneda-Escobar had
been injured as a subcontractor of IBS, which was a sub-
contractor of Sur, the Policy Exclusion barred coverage. *Id.* at
5.

In October 2014, the attorneys hired by Western World to
defend Sur moved to withdraw from the indemnification suit. ECF
No. 17-15. Milton opposed the motion on the basis that
promissory estoppel barred Western World's belated denial of
coverage. ECF Nos. 1-6 at 5; 17-1 at 10. Defense counsel
withdrew the motion for leave to withdraw, which was dismissed
without prejudice. ECF Nos. 17-1 at 10; 17-16. Western World
is presently defending Sur in the indemnification suit pending
the earlier of that suit's resolution or this Court's decision
in this declaratory judgment action. ECF Nos. 1 ¶ 19; 1-5 at 3.

B.   Procedural History

On December 18, 2014, Western World filed a complaint for a
declaratory judgment that it had no duty to defend and indemnify
Sur against personal injury claims related to Castaneda-

Escobar's May 12, 2010 fall.  ECF No. 1.[9]  On February 12, 2015,

Castaneda-Escobar moved to dismiss for improper venue, or to

transfer the suit to the U.S. District Court for the Eastern

District of Pennsylvania.  ECF No. 17.  On February 20, 2015,

Sur moved to dismiss for lack of subject matter jurisdiction or

failure to state a claim, or to stay the suit pending resolution

of the Pennsylvania state litigation.  ECF No. 18.  That day,

Sur opposed Castaneda-Escobar's motion.  ECF No. 19.

---

[9] This Court has diversity jurisdiction under 28 U.S.C. § 1332
because the parties are citizens of different states and more
than $75,000 is at issue.  ECF No. 1 ¶¶ 2-6; 28 U.S.C. § 1332
(2012)("The district courts shall have original jurisdiction of
all civil actions where the matter in controversy exceeds the
sum or value of $75,000, exclusive of interest and costs, and is
between . . . citizens of different States.").  Western World is
incorporated in New Hampshire and has its principal place of
business in New Jersey.  ECF No. 1 ¶ 2.  Sur is incorporated,
and has its principal place of business, in Maryland.  *Id.* ¶ 3.
Mr. Castaneda-Escobar is a citizen of Pennsylvania.  *Id.* ¶ 4.
Milton is incorporated, and has its principal place of business,
in Pennsylvania.  *Id.* ¶ 5.

Western World alleges that venue is proper because:
      [Sur] has its principal place of business in
      Montgomery County, Maryland. [Mr.] Castaneda-Escobar
      sustained the personal injuries giving rise to the
      claims alleged against [Sur] in Montgomery County,
      Maryland while performing work and services as
      particularized below. [IBS], the predecessor in
      interest to [] Milton, transacted business and
      performed work and services, and contracted to supply
      goods, services and manufactured products, and caused
      tortious injury by acts and omissions directly and by
      agents in Montgomery County, Maryland as
      particularized below. [Western World] delivered its
      insurance policy to [Sur] in Maryland.
ECF No. 1 ¶ 8.

On March 2, 2015, Western World opposed Castaneda-Escobar's motion. ECF No. 20. On March 9, 2015, Western World opposed Sur's motion. ECF No. 22. That day, Castaneda-Escobar filed a response in support of Sur's motion. ECF No. 23. On March 17, 2015, Castaneda-Escobar replied to Western World's opposition to its motion. ECF No. 24.[10]

## II. Analysis

### A.  Motion to Dismiss for Improper Venue, or to Transfer

#### 1.  Legal Standard

"[W]hen venue is challenged by a motion to dismiss, the plaintiff bears the burden of establishing that venue is proper." *Jones v. Koons Auto., Inc.*, 752 F.Supp.2d 670, 679–80 (D. Md. 2010). The plaintiff need only "make a *prima facie* showing of venue" to survive dismissal. CMA CGM (Am.), LLC v. RLI Ins. Co., No. 12-CV-03306-AW, 2013 WL 588978, at *2 (D. Md. Feb. 13, 2013) (*citing Aggarao v. MOL Ship Mgmt. Co., Ltd.*, 675 F.3d 355, 366 (4th Cir. 2012)). In considering the motion, "the pleadings need not be accepted as true . . . and the court 'may consider facts outside of the pleadings.'" *Essex Ins. Co.*, 2006 WL 1892411, at *1-2 (*quoting Richardson v. Lloyd's of London*, 135 F.3d 1289, 1292 (9th Cir. 1998)). However, the court must view the facts "as the plaintiff most strongly can plead them,"

---

[10] Sur's reply to Western World's opposition to its motion was due on March 26, 2015. To date, Sur has not replied. *See* Docket.

and "all inferences must be drawn in favor of the plaintiff."
*Silo Point II LLC v. Suffolk Constr. Co.,* 578 F.Supp.2d 807, 809
(D. Md. 2008) (internal quotation marks omitted).

     2.   Castaneda-Escobar's Motion

The parties agree that 28 U.S.C. § 1391(b)(2) governs the
venue determination.  ECF Nos. 17-1 at 12; 19 at 2; 20 at 2.
Under § 1391(b)(2), venue is proper in "a judicial district in
which a substantial part of the events or omissions giving rise
to the claim occurred . . . ."  28 U.S.C. § 1391(b)(2)(2012).

Castaneda-Escobar argues that venue is improper in Maryland
because "the factual predicate that gives rise to coverage in
this case" is Western World's defense of Sur in the
indemnification suit in Pennsylvania.  ECF No. 17-1 at 12; *see
also id.* at 16 ("[T]he judicial district in which the events
occurred that give rise to estoppel-based coverage is clearly
Pennsylvania.").  Sur argues that Western World's denial of
coverage is a contractual dispute; thus, venue is proper in
Maryland as the place where a substantial number of the events
that gave rise to coverage occurred.  ECF No. 19 at 3.  Sur
further argues that because estoppel is a defense to the denial
of coverage, it is not relevant until there is a finding that
the Policy Exclusion applies in the indemnification suit; thus,
the Court should not determine venue on the basis of Western
World's conduct that may estop it from denying coverage.  *Id.* at

8.   Like Sur,[11] Western World argues that venue is proper in Maryland because "the events giving rise to Western World's claim--the placement of [Sur's] insurance risk with Western World--occurred in Maryland," and that the estoppel defense in the indemnification suit "is irrelevant to the issue of venue" in this case.   ECF No. 20 at 4-5 (footnote omitted).   In reply, Castaneda-Escobar contends that "there is no dispute about, nor ambiguity in, the [Policy Exclusion]"; rather, coverage will depend upon the outcome of the indemnification suit.   ECF No. 24 at 2.[12]

Although coverage *may* ultimately turn on the defense of equitable estoppel, this declaratory action requires the Court to decide whether Western World is obligated *under the terms of*

---

[11] Western World incorporated by reference relevant sections of Sur's opposition.   *See* ECF No. 20 at 4, 5.

[12] Castaneda-Escobar states four scenarios under which coverage will be determined in the indemnification suit:
> (1) If [Sur] prevails by summary judgment or by verdict . . ., this declaratory judgment action becomes moot; (2) If Milton prevails at trial against [Sur], based on [Sur's] status as the General Contractor that hired [RMC], then the [Policy Exclusion] excludes coverage; (3) If Milton prevails at trial against SUR, based on [Sur's] status as the property owner and developer which failed in its role to supervise the work of a contractor that was not hired by [Sur] but by an independent vendor, Milton, then the [Policy Exclusion] does not apply and there is coverage; or (4) Western World will be estopped from denying coverage because of its conduct in defending the Philadelphia contribution action . . . .

ECF No. 24 at 2-3.

*the Policy* to defend and indemnify Sur in the indemnification suit. *See* ECF No. 1 at 7 ("Wherefore" clause). Contrary to Castaneda-Escobar's emphasis on estoppel, the Fourth Circuit has instructed district courts:

> in determining whether events or omissions are sufficiently substantial to support venue under the amended statute, *a court should not focus only on those matters that are in dispute* or that directly led to the filing of the action. Rather, it should review the *entire sequence of events* underlying the claim.

*Mitrano v. Hawes*, 377 F.3d 402, 405 (4th Cir. 2004) (internal quotation marks and citations omitted) (emphasis added). Additionally, although the underlying action for which Sur seeks indemnity was filed in Pennsylvania, and Milton--the plaintiff in the indemnification suit--is a Pennsylvania citizen, venue may be proper in more than one judicial district. *See Mitrano*, 377 F.3d at 405.

Here, the parties agree that Western World delivered the Policy to Sur, a Maryland corporation, in Maryland, through Freedom, a Maryland broker, ostensibly for work performed in Maryland, and that Mr. Castaneda-Escobar sustained his personal injuries in Maryland. ECF Nos. 1 ¶ 8; 17-1 at 12. Because a substantial number of the events giving rise to Western World's declaratory action occurred in Maryland, venue is proper in the District of Maryland. *Cf. Uffner v. La Reunion Francaise, S.A.*, 244 F.3d 38, 41 (1st Cir. 2001) (reversing district court and

10

finding venue proper in District of Puerto Rico where a boat caught fire and sank, even though the bad faith denial of coverage claim did not involve the District of Puerto Rico or the circumstances of the boat's sinking), *cited by Mitrano*, 377 F.3d at 406; *Selective Ins. Co. of S. Carolina v. Schremmer*, 465 F. Supp. 2d 524, 526 (D.S.C. 2006) (venue proper in South Carolina when insurer incorporated in South Carolina and injury occurred in South Carolina).

Castaneda-Escobar relies on *Essex Ins. Co. v. MDRB Corp.*, No. CIVA DKC 2006-0326, 2006 WL 1892411, at *1-2 (D. Md. June 7, 2006), to support his argument that Maryland is an improper venue because the conduct creating Western World's insurance obligation (its defense of SUR in the indemnification suit) occurred exclusively in Pennsylvania.   ECF No. 17-1 at 16. *Essex, Ins.*, however, is distinguishable.   There, the plaintiff brought a declaratory action seeking the court's declaration that an insurance policy issued to the plaintiff did not provide coverage in a wrongful death action arising from a stabbing; the defendant moved to dismiss for lack of venue.   *Id*. at *1.   The defendant's Maryland incorporation was the only contact with Maryland.   *Id*. at *4.   The policy at issue covered a District of Columbia hotel, where the defendant's alleged negligence and the stabbing occurred, and the police investigation, criminal proceedings, and wrongful death action occurred in the District

11

of Columbia.  *Id*. at *3.  Here, Western World issued an insurance policy to a Maryland corporation performing work in Maryland, and the accident underlying this and the Pennsylvania litigation occurred in Maryland.  Thus, this is not a case where "there is no evidence that *any*, much less a substantial, part of the events took place in Maryland."  *Essex Ins*., 2006 WL 1892411, at *3 (emphasis added); *see also CMA CGM (Am.), LLC v. RLI Ins. Co.*, No. 12-CV-03306-AW, 2013 WL 588978, at *2-3 (D. Md. Feb. 13, 2013) (venue improper in Maryland when insurer and insured were Texas entities, accident occurred in Texas, underlying action filed in Texas, and none of the parties to declaratory action resided in Maryland).

Because venue is proper in Maryland, the Court need not address Castaneda-Escobar's alternative argument to transfer the suit to the Eastern District of Pennsylvania under 28 U.S.C. § 1406(a).  *See* ECF No. 17-1 at 17; 28 U.S.C. § 1406(a)(2012) ("The district court of a district in which is filed a case laying venue in the *wrong division or district* shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought.") (emphasis added); *see also* ECF No. 24 at 1 (clarifying that Castaneda-Escobar has *not* sought transfer on the basis of *forum non conveniens* under 28 U.S.C. § 1404(a)).  In any event, Castaneda-Escobar's reliance on *Essex, Ins*. to support transfer

is misplaced. *See* ECF No. 17-1 at 17 (*quoting Essex, Ins.*, 2006 WL 1892411, at *5 ("[W]here a related action is pending in another judicial district, transfer to that district is preferred when venue is proper in that district and when transfer promotes efficient resolution of both suits.")). *Essex, Ins.*, and the cases relied on therein, involved transfer to a federal court where related actions were pending. 2006 WL 1892411, at *5. Castaneda-Escobar has not shown that transfer of this suit to a federal court in the state where related *state* actions are pending "promotes efficient resolution of both suits," *id.*, or avoids "inconsistent findings of fact and conclusions of law," *Prof'l Ass'n Travel Serv., Inc. v. Arrow Air, Inc.*, 597 F. Supp. 475, 476 (D.D.C. 1984), *cited by Essex, Ins.*, 2006 WL 1892411, at *5. Accordingly, Castaneda-Escobar's motion to dismiss for lack of venue, or to transfer, will be denied.

     B.   Motion to Dismiss or to Stay

     1.   Legal Standard

Although Sur presents its motion to dismiss as arising under Federal Rules of Civil Procedure 12(b)(1) and (6),[13] it does not argue that this Court lacks diversity jurisdiction; rather, Sur argues that the Court should decline to hear the

---

[13] Fed. R. Civ. P. 12(b)(1), (6).

suit because Western World's claim "relies on material facts that will be decided in the [indemnification suit]."  ECF No. 18-1 at 5; *see also* ECF No. 23 (Castaneda-Escobar's response in support of Sur's motion).[14]  Sur has not articulated a clear standard of review applicable to its Rule 12(b)(6) motion.  As Western World notes,[15]

> the purpose of Rule 12(b)(6) is to test the sufficiency of a complaint and not to resolve contests surrounding the facts, *the merits of a claim*, or the applicability of defenses. . . . When ruling on such a motion, the court must accept the well-pled allegations of the complaint as true and construe the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff. . . .

*Ferdinand-Davenport v. The Children's Guild*, 742 F. Supp. 2d 772, 779 (D. Md. 2010) (alterations, internal quotation marks, and citations omitted) (emphasis added).  A declaratory action requires the Court to make two determinations: (1) whether to exercise its diversity jurisdiction over the declaratory action, and (2) if it does, whether the plaintiff is entitled to a declaration in its favor.  *See* 28 U.S.C. § 2201(a) (when jurisdictional requirements are met, "any court of the United States . . . *may* declare the rights and other legal relations of any interested party seeking such declaration")(emphasis added);

---

[14] Western World argues that this Court may properly decide the declaratory action because the same facts are not at issue.  ECF No. 22 at 6-9.

[15] *See* ECF No. 22 at 1-2.

*Mitcheson v. Harris*, 955 F.2d 235, 237 (4th Cir. 1992) ("We acknowledge at the outset that the district court . . . possess[ed] diversity jurisdiction . . . to entertain this declaratory judgment action. The critical question, however, is whether the district court should have exercised the jurisdiction it possessed."); *id*. at 241-42 (Hall, J., dissenting) (agreeing with district court's decision to exercise jurisdiction but disagreeing with the district court's decision on the merits).[16]   Sur's Rule 12(b)(6) motion to dismiss is *not* the proper vehicle for this Court to decide the merits of Western World's complaint, *i.e.*, whether a declaration should issue in its favor.   That determination is more suited to a summary judgment motion, which Western World has not filed. *See, e.g.*, *Mitcheson*, 955 F.2d at 236 (reversing district court's grant of summary judgment to insurer and corresponding declaration that insurer had no duty to defend or indemnify insured); *Nautilus Ins. Co. v. BSA Ltd. P'ship*, 602 F. Supp. 2d

---

[16] *See also Am. Motorists Ins. Co. v. Commonwealth Med. Liab. Ins. Co.*, 306 F. Supp. 2d 576, 579 (E.D. Va. 2004) (Title 28 U.S.C. § 2201 affords district courts the discretionary authority to grant declaratory relief . . . ."); *Penn Nat. Ins. Co. v. E. Homes, Inc.*, No. CIV.A. RDB-07-672, 2007 WL 4179428, at *5 (D. Md. Nov. 19, 2007) ("[T]his Court has discretion to decline to exercise jurisdiction over declaratory judgment actions brought under [28 U.S.C. § 2201]."); *Brohawn v. Transamerica Ins. Co.*, 276 Md. 396, 405-06, 347 A.2d 842, 849 (1975) (under Maryland law, declarations may be refused on jurisdictional or discretionary grounds).

641, 648 (D. Md. 2009) (granting in part insurer's motion for summary judgment; declaring that insurer had a duty to defend insured against some of the pending claims);[17] *Harrison v. Fireman's Fund Ins. Co.*, No. CIV.A. ELH-11-1258, 2011 WL 6939272, at *12 (D. Md. Dec. 29, 2011) (granting insurer's cross-motion for summary judgment and issuing declaration).

In deciding whether to dismiss or stay a declaratory action, "a district court should examine the scope of the pending state court proceeding and the nature of defenses open there." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 283, 115 S. Ct. 2137, 2141, 132 L. Ed. 2d 214 (1995) (internal quotation

---

[17] Sur relies on *Nautilus Ins.* to support its contention that this Court should dismiss the declaratory action. ECF No. 18-1 at 4. Sur has misunderstood *Nautilus Ins.* According to Sur, the court (1) "held that declaratory relief regarding the duty to indemnify was premature and inappropriate"; (2) "reasoned that the 'underlying suit remain[ed] pending with several factual issues to be decided[,] many of them implicating the very coverage issues at issue in this suit'"; and (3) "further explained that because 'material facts [were] in dispute, going to the underlying liability of [the insured],' it could not grant declaratory judgment." *Id.* (*quoting Nautilus, Ins.*, 602 F. Supp. 2d at 649). In fact, the *Nautilus, Ins.* court "declared that Nautilus Insurance Company ha[d] a duty to defend BSA Limited Partnership as to the first and second causes of action." 602 F. Supp. 2d at 657 (accompanying order). As to the court's supposed "reason[ing]" and "further explan[ation]," Sur ascribes to the court the defendant's arguments against summary judgment. *See id.* at 649 ("As an initial matter, the *Feemster Parties argue* that a declaratory judgment is inappropriate because the underlying suit 'remains pending with several factual issues to be decided[,] many of them implicating the very coverage issues at issue in this suit.' . . . Similarly, the *Feemster Parties also argue* that summary judgment is inappropriate 'with material facts in dispute, going to the underlying liability of BSA.'") (emphasis added).

16

marks and citation omitted).  This requires district courts to consider "whether the claims of all parties in interest can satisfactorily be adjudicated in that proceeding, whether necessary parties have been joined, whether such parties are amenable to process in that proceeding, etc." *Id.* (citation omitted).  In the Fourth Circuit, a district court should entertain a declaratory action when "the declaratory relief sought: (1) "'will serve a useful purpose in clarifying and settling the legal relations in issue,' and (2) 'will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding.'" *Aetna Cas. & Sur. Co. v. Ind-Com Elec. Co.*, 139 F.3d 419, 422 (4th Cir. 1998) (*quoting Aetna Cas. & Sur. Co. v. Quarles*, 92 F.2d 321, 325 (4th Cir. 1937)).  In sum, these considerations correspond to the following legal standard applicable to Sur's motion:

> (1) whether the state has a strong interest in having the issues decided in its courts; (2) whether the state courts could resolve the issues more efficiently than the federal courts; (3) whether the presence of overlapping issues of fact or law might create unnecessary entanglement between the state and federal courts; and (4) whether the federal action is mere procedural fencing, in the sense that the action is merely the product of forum-shopping.

*New Wellington Fin. Corp. v. Flagship Resort Dev. Corp.*, 416 F.3d 290, 297 (4th Cir. 2005)(internal quotation marks and citation omitted).

2.   Whether the Court Should Exercise Jurisdiction

A state's interest in adjudicating a dispute depends, in part, on whether its law applies to the dispute. *Mitcheson*, 955 F.2d at 237 ("There exists an interest in having the most authoritative voice speak on the meaning of applicable law, and that voice belongs to the state courts when state law controls the resolution of the case.").  In deciding whether Pennsylvania or Maryland law applies, a Pennsylvania court would first decide whether a conflict exists between the laws of the two states. *Hammersmith v. TIG Ins. Co.*, 480 F.3d 220, 230 (3d Cir. 2007). If there is no conflict, the court may apply either state's law because the outcome would be the same.  *Id.* (*citing Huber v. Taylor*, 469 F.3d 67, 74 (3d Cir. 2006)).  If there is a conflict, the court must decide "which state has the 'greater interest in the application of its law.'"  *Id.* (*citing Ratti v. Wheeling Pittsburgh Steel Corp.*, 758 A.2d 695, 702 (Pa. Super. 2000)).  In the event of a conflict, Pennsylvania courts have recognized that when--as here--Maryland is the state in which the insurance policy was negotiated and made, and is where the insured is located, Maryland has the greater interest in the application of its law--even when an injured party is a Pennsylvania citizen. *See Travelers Indem. Co. v. MTS Transp., LLC*, No. 11-CV-01567, 2012 WL 3929810, at *11 (W.D. Pa. Sept. 7, 2012); *Manor Care, Inc. v. Cont'l Ins. Co.*, No. CIV.A. 01-CV-

18

2524, 2003 WL 22436225, at *7 (E.D. Pa. Oct. 27, 2003).[18]
Accordingly, Pennsylvania's interest--if any--in applying its
law to the coverage dispute is minimal. *Cf. New Wellington*, 416
F.3d at 297-98 (New Jersey had greater interest in applying New
Jersey law); *Am. Motorists Ins. Co.*, 306 F. Supp. 2d at 581
(declining jurisdiction because, *inter alia*, Virginia had a
"strong interest" in resolving "purely state law contract and
insurance issues"). Similarly, because there are no federal
claims, this Court's interest in resolving the declaratory
action is also not strong. *See Mitcheson*, 955 F.2d at 238
("Absent a strong countervailing federal interest, the federal
court here should not elbow its way into this controversy to
render what may be an 'uncertain and ephemeral' interpretation
of state law."). Accordingly, this factor is neutral. *See*
*Wilton*, 515 U.S. at 288, 115 S. Ct. 2137 ("In the declaratory

---

[18] This Court would also apply Maryland law. Because Maryland is
the forum state, the Court would apply Maryland choice-of-law
rules. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487,
496–97, 61 S. Ct. 1020, 85 L. Ed. 1477 (1941); *Colgan Air, Inc.*
*v. Raytheon Aircraft Co.*, 507 F.3d 270, 275 (4th Cir. 2007).
"Maryland uses the *lex loci contractus* rule: 'the law of the
jurisdiction where the contract was made controls its validity
and construction.'" *Rose v. New Day Fin.*, 816 F. Supp. 2d 245,
253 (D. Md. 2011) (*quoting Kramer v. Bally's Park Place, Inc.*,
311 Md. 387, 390, 535 A.2d 466, 467 (1988)). The "'*locus*
*contractu* of an insurance policy is the state in which the
policy is delivered and the premiums are paid.'" *Harrison*, 2011
WL 6939272, at *1 (*quoting U.S. Life Ins. Co. v. Wilson*, 198 Md.
App. 452, 463, 18 A.3d 110, 116 (2011)). Here, Western World
delivered the Policy to Sur in Maryland; thus, Maryland law
would apply. ECF No. 1 ¶ 8.

judgment context, the normal principle that federal courts should adjudicate claims within their jurisdiction yields to considerations of practicality and wise judicial administration.").

As to efficiency, resolution of the declaratory action will not "settle all aspects of the legal controversy." *Mitcheson*, 955 F. 2d at 239.  Regardless of Western World's duty to defend and indemnify Sur, the indemnification suit asserts claims of negligence against Sur and contractual or common law indemnification of Milton by Sur.  ECF No. 1-3 at 9-12; *see Centennial Life Ins. Co. v. Poston*, 88 F.3d 255, 258 (4th Cir. 1996) (efficiency and judicial economy disfavored the district court's exercise of jurisdiction when a declaration would fail to settle the entire controversy and state court could resolve all issues).  To the extent that Western World may be estopped from denying coverage, a declaration by this Court may spur additional litigation. *See Mitcheson*, 955 F.2d at 239 ("[The Fourth Circuit] has long recognized that it makes no sense as a matter of judicial economy for a federal court to entertain a declaratory action when the result would be to 'try a controversy by piecemeal, or to try particular issues without settling the entire controversy.'") (*quoting Quarles*, 92 F.2d at 325).

Further, a declaration that Western World has no duty to defend SUR creates "inefficiencies" from the delay caused by Sur's need to obtain substitute counsel. *See* ECF No. 1 ¶ 19; *Mitcheson*, 955 F.2d at 239. Similarly, a declaration that Western World has no duty to indemnify Sur "could be rendered totally unnecessary by a subsequent state verdict for [Sur] in the [indemnification suit]" or decided after if Sur does not prevail. *Mitcheson*, 955 F.2d at 239 (*citing Indemnity Ins. Co. v. Schriefer*, 142 F.2d 851, 853 (4th Cir. 1944) (affirming dismissal of declaratory action because duty to indemnify would be moot if insured prevailed in state litigation or decided after if insured did not prevail).

On the other hand, although Pennsylvania has an interest in "resolving all litigation stemming from a single controversy in a single court system," an interest "grounded in the . . . important pragmatic concerns of efficiency and comity," it is unclear whether it could do so. *Mitcheson*, 955 F.2d at 239. Relevant here, Western World argued in its opposition to Castaneda-Escobar's motion to dismiss for lack of venue that although the Pennsylvania court exercised personal jurisdiction over SUR in the indemnification suit because it arose from or was related to the Pennsylvania contract under which SUR bought the home from Milton, that "has no significance for general personal jurisdiction in the Eastern District over this Maryland

21

corporation in a suit arising from a Maryland insurance contract." ECF No. 20 at 5 n.3. Pennsylvania law provides for intervention and cross-claims for declaratory relief by persons subject to indemnification liability, thereby obviating the need for a separate suit. *See* Pa. R. Civ. P. 2327(1) (providing for intervention when "the entry of a judgment in such action . . . will impose any liability upon such person to indemnify . . . the party against whom judgment may be entered "); Pa. R. Civ. P. 1031.1(1) (permitting cross-claims "against any other party to the action that the other party may be . . . solely liable on the underlying cause of action"); *Com. v. Philip Morris Inc.*, 40 Pa. D. & C. 4th 225, 243 (Com. Pl. 1999) (addressing petition to intervene to seek declaratory relief). However, this Court cannot predict whether a Pennsylvania court would permit Western World to intervene in the indemnification suit to have coverage issues decided. Accordingly, this factor is neutral.

Turning to the "core question" of "whether the presence of overlapping issues of fact or law might create unnecessary entanglement between the state and federal courts,"[19] the Court finds that the duty to defend presents issues that are separate from the indemnification suit; however, the duty to indemnify presents overlapping issues.

---

[19] *New Wellington Fin. Corp.*, 416 F.3d at 297; *Eastern Homes*, 2007 WL 4179428, at *6.

"In Maryland, it is axiomatic that the duty to defend is broader than the duty to indemnify." *Perdue Farms, Inc. v. Travelers Cas. & Surety Co. of Am.*, 448 F.3d 252, 257 (4th Cir. 2006). "An insurance company has a duty to defend its insured for all claims that are potentially covered under the policy." *Walk v. Hartford Cas. Ins. Co.*, 852 A.2d 98, 106 (Md. Ct. Spec. App. 2004). This demands a two-part inquiry: "(1) what is the coverage and what are the defenses under the terms and requirements of the insurance policy? [and] (2) do the allegations in the [underlying] tort action . . . potentially bring the tort claim within the policy's coverage?" *Id.* (*quoting Aetna Casualty & Surety Company v. Cochran*, 337 Md. 98, 651 A.2d 859 (1995)). Thus, to decide whether Western World has a duty to defend, the Court need not engage in factfinding, but must compare Milton's allegations in the indemnification suit with the Policy[20] and the Policy Exclusion. *See Walk*, 852 A.2d at 105 (duty to defend depends on "whether the allegations in the underlying action potentially could fall within the scope and limitations of coverage" of the insurance policy); *Eastern Homes*, 2007 WL 4179428, at *7.[21]

---

[20] The complete Policy is not in the record; Western World has only provided the Policy cover page and the Policy Exclusion. *See* ECF No. 1-1.

[21] However, "[w]hen the complaint in the underlying action 'neither conclusively establishes nor negates a potentiality of

"In contrast, the question whether the insurer has a duty to pay a final judgment against the insured [generally] turns on a comparison of the ultimate findings of fact concerning the alleged occurrence with the policy coverage." *Steyer v. Westvaco Corp.*, 450 F. Supp. 384, 389 (D. Md. 1978); *Eastern Homes*, 2007 WL 4179428, at *7. Sur argues that a factual dispute about "the nature of the relationship between Sur and [Milton]"--to be decided by the Pennsylvania court--impacts Sur's liability to Milton and Western World's duty to indemnify Sur. ECF No. 18-1 at 2. Sur contends that the personal injury suit alleges that Sur "merely purchased" the home from Milton, whereas the indemnification suit alleges that Sur was the general contractor when Mr. Castaneda-Escobar fell from the roof. *Id.* Western World argues that the Policy Exclusion does not refer to "general contractor" or "customer"; thus, those terms are irrelevant. ECF No. 22 at 4. Rather, according to Western World, the parties "agree that [RMC] was a contractor

---

coverage,' an insured is entitled to rely on extrinsic evidence to establish a potentiality of coverage." *Nationwide Mut. Ins. Co. v. Jones*, No. CIV. JFM-05-2792, 2006 WL 361336, at *6 (D. Md. Feb. 15, 2006) (*quoting Cochran*, 337 Md. at 108, 651 A.2d 859). Doubts must be resolved in favor of the insured: "[i]t is only where the alleged conduct of the insured as to one or more of the claims made is 'patently' outside the terms of the insurance contract and 'as a matter of law' is excluded from the policy, that a pre-tort trial declaratory judgment should be rendered." *Id.* at *2 (D. Md. Feb. 15, 2006) (*quoting Allstate Ins. Co. v. Atwood*, 319 Md. 247, 572 A.2d 154, 157 (Md. 1990)).

hired by [Milton or Sur]," and the declaratory action does not require this Court to resolve who hired RMC. *Id.* at 5 n.6.

However, even if RMC was hired not by Sur but by Milton, the Court must decide *whether Milton was hired by Sur*. *See* ECF No. 1 ¶ 9; ECF No. 1-1 at 3. Resolving that issue requires this Court to determine the relationship between Sur and Milton, which, in turn, depends on the resolution of facts alleged in the indemnification suit. *See, e.g.*, ECF No. 1-3 ¶ 6 (alleging that Sur contracted with Milton "for the purchase, design[,] and off-site construction" of the home). Accordingly, there are at least some overlapping factual issues between the indemnification suit and this declaratory action. This factor somewhat favors dismissal.

As to the fourth and final factor, there is no indication that Western World is procedurally fencing or forum shopping. Western World filed its complaint soon after conducting its coverage review. ECF Nos. 1 (complaint filed December 2014); 1-4 (August 2014 letter noting that Western World had recently performed a coverage review). Also, as noted above, the same law would likely apply to Western World's entitlement to a declaration even if it had sought the declaration in a Pennsylvania court. This factor favors jurisdiction.

In sum, neither Pennsylvania's state interest nor efficiency considerations favor or disfavor dismissal, and the

absence of procedural fencing or forum shopping favors retaining
jurisdiction.  However, the presence of overlapping issues
favors dismissal *at least as to the duty to indemnify*.  *See*
*Eastern Homes*, 2007 WL 4179428, at *9 (the Court may dismiss
only the duty to indemnify issue, but declining to do so when
efficiency considerations also favored dismissal).  The parties
agree that a declaration by this Court is inappropriate when the
underlying state action presents the same factual issues.  *See*
ECF Nos. 18-1 at 3 (*citing Brohawn*); 22 at 6 (same).  Because
there are overlapping factual issues concerning the duty to
indemnify, this Court's exercise of jurisdiction would be
"manifestly unwise."  *Brohawn*, 276 Md. 396, 405, 347 A.2d 842;
*see also Mitcheson*, 955 F.2d at 239-40 (the presence of
overlapping factual issues counsels against jurisdiction because
the resulting "issue preclusion will likely frustrate the
orderly progress of state court proceedings by leaving the state
court with some parts of a case foreclosed from further
examination but still other parts in need of full scale
resolution, . . . thereby creating further entanglement").
Accordingly, Sur's motion to dismiss will be granted in part as
to the duty to indemnify; Western World's request for a
declaration of no duty to defend may proceed.

III. Conclusion

For the reasons stated above, Castaneda-Escobar's motion will be denied; Sur's motion will be granted in part and denied in part.

_____9/24/15_____
Date

_____
William D. Quarles, Jr.
United States District Judge